# Exhibit B

# RESIDENTIAL CONTRACT OF SALE

*y Prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association. (11/00)*

## CONSULT YOUR LAWYER BEFORE SIGNING THIS CONTRACT.

OTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION. This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

WARNING: PLAIN LANGUAGE. No representation is made that this form of contract for the sale and purchase of real estate complies with Section 5-702 of the General Obligations Law ("Plain Language").

CONTRACT OF SALE made as of                    January 4 , 2018                    between

    Robert Dakin and Barbara Dakin
Address: 25 Winston Lane, Garrison, New York 10524

Social Security Number/Fed. I. D. No(s):                                        hereinafter called "Seller" and

    Mildred Dorta and Anthony Acosta
Address: 181 Cornelia Street, Brooklyn, New York 11221

Social Security Number/Fed. I. D. No(s):                                        hereinafter called "Purchaser."

The parties hereby agree as follows:

**1.    Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A," annexed hereto and made a part hereof and also known as:
Street Address: **25 Winston Lane, Garrison, New York 10524**
Tax Map Designation: **Section 90.8, Block 2, Lot(s) 30, Town of Philipstown, Putnam County**
Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2.    Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below. (*strike out inapplicable items*).
**all appliances and property is in AS IS condition**

Excluded from this sale are furniture and household furnishings and

3. **Purchase Price.** The purchase price is                                        $   240,000.00
payable as follows:

(a)  on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):                                        $   12,000.00

(b)  by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:                                        $

(c)  by a purchase money note and mortgage from Purchaser to Seller:                                        $

(d)  balance at Closing in accordance with paragraph 7:                                        $   228,000.00

4. **Existing Mortgage.** *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:

(a)  The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of        percent per annum, in monthly installments of $        which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on

(b)  To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c)  If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d)  Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.

(e)  Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

5. **Purchase Money Mortgage.** *(Delete if inapplicable)* If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:

(a)  The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $        for its preparation.

(b)  The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than        percent per annum and the total debt service thereunder shall not be greater than $        per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

6. **Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at   TD Bank
Address:  96 Gleneida Avenue, Carmel, NY 10512
until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n)        **non**        interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of

objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

 (b) The parties acknowledge that, Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

 (c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

 (d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

 (e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

 (f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:
 (a) Cash, but not over $1,000.00;
 (b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;
 (c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $   ; and
 (d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause.)*
 (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before **45** days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ **228,000.00** for a term of at least **30** years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

 (b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

 (c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the

terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9.  **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a)  Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b)  Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c)  Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d)  Real estate taxes that are a lien, but are not yet due and payable; and

(e)  The other matters, if any, including a survey exception, set forth in a Rider attached.

10.  **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b)  (*Delete if inapplicable*) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

11.  **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i)  The Premises abut or have a right of access to a public road;

(ii)  Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii)  Seller is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv)  The Premises are not affected by any exemptions or abatements of taxes; and

(v)  Seller has been known by no other name for the past ten years, except

(b)   Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c)   Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12.   Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13.   Insurable Title.** Seller shall give and Purchaser shall accept such title as **any reputable title insurance or abstract company licensed to do business in the state of New York**
shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14.   Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a  bargain and sale with covenant against grantor's acts  deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b)   If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15.   Closing Date and Place.** Closing shall take place at the office of  **Rick S. Cowle, Esq., 18 Fair Street, Carmel, New York 10512**
at     **10:00 a.m.**   o'clock on      **or about May 15, 2018**      or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of

**16.   Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a)   The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b)   The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a  **single**
family dwelling at the date of Closing.

(c)   The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA, or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d)   The delivery of the Premises and all buildings(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e)   All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the buildings(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f)   If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g)   The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17.   Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate

State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i)    taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b)    If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c)    If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d)    If at the date of Closing the premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

~~(e)    Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.~~

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient moneys with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i)If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c)    If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser ~~and, unless~~

~~cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title,~~ including any appropriate additional charges related thereto, ~~and the net cost, if actually~~ paid or incurred by Purchaser, for updating the existing survey of the Premises ~~or of a new survey,~~ and (ii) the obligations under paragraph 27 shall survive the termination of ~~this contract.~~

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b)    If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b)    delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c)    with respect to ¶7(b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine.  A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale other than  **Christine Rowley, RE/MAX Classic Realty and Lillian Moynihan, RE/MAX Classic Realty**

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b)    Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c)    Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d)    The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e)    This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f)  Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g)  Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h)  This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i)  If applicable, the complete and fully executed disclosure of information on **lead-based paint** and/or lead-based paint hazards is attached hereto and made a part hereof.

**IN WITNESS WHEREOF**, this contract has been duly executed by the parties hereto.

SELLER:

By: **Robert Dakin**

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

*Social Security No./Fed. I.D. No.*

By: **Barbara Dakin**

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

*Social Security No./Fed. I.D. No.*

PURCHASER:

By: **Mildred Dorta**

*Social Security No./Fed. I.D. No.*

By: **Anthony Acosta**

*Social Security No./Fed. I.D. No.*

Attorney for Seller: Rick S. Cowle, Esq.
Address: **The Law Office of Rick S. Cowle, P.C.**
        **18 Fair Street**
        **Carmel, New York 10512**
Tel.: (845) 225-3026        Fax: (845) 225-3027
Email:

Attorney for Purchaser: Joseph Tock, Esq.
Address:
        **963 Route 6**
        **Mahopac, New York 10541**
Tel.: (845) 628-8080        Fax: (845) 628-5450
Email:

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6.

The Law Office of Rick S. Cowle, P.C.

Rick S. Cowle, Esq.

NOTES ON MODEL MORTGAGE COMMITMENT CONTINGENCY CLAUSE for RESIDENTIAL CONTRACT OF SALE

1. WARNING: the mortgage commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sales of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of closing in the contract and request that the expiration date of the commitment occur after the scheduled date of closing. Purchaser must comply with deadlines and pursue the application in good faith. The commitment contingency is satisfied by issuance of a commitment in the amount specified on or before the Commitment Date, unless the commitment is conditioned on approval of an appraisal. If the commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the commitment.

5. If, as has been common, the commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those commitment conditions, including forfeiture of the downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting purchaser may not recover any part of the downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6. Purchaser may submit an application to a registered mortgage broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the commitment, to allow Seller the option to avoid having to wait until the scheduled date of closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 22 that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale [alternative: if Seller is unable to transfer title under the contract of sale].

*Joint Committee on the Mortgage Contingency Clause:  Real Property Section of the New York State Bar Association; Real Property Law Committee of the Association of the Bar of the City of New York;  Real Property Committee of the New York County Lawyers Association.*

## DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT
## AND LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure (initial)**

_____ (a)    Presence of lead-based paint and/or lead-based paint hazards (check one below):

[ ]    Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

*BD*
*RD*    [x]    Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)    Records and reports available to the seller (check one below):

[ ]    Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

[x]    Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**

_____ (c)    Purchaser has received copies of all information listed above.

_____ (d)    Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

_____ (e)    Purchaser has (check one below):

[ ]    Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

[ ]    Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**

_____ (f)    Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

_Robt W. Dakin_    1/3/18        _Barbara Dakin_    1/3/18
Seller **Robert Dakin**    Date        Seller **Barbara Dakin**    Date

Agent    Date        Agent    Date

_Mildred Dorta_    1/3/18        _Anthony Acosta_    1/3/18
Purchaser **Mildred Dorta**    Date        Purchaser **Anthony Acosta**    Date

© 2018 Matthew Bender & Company, Inc., a member of LexisNexis.

SELLER'S RIDER
RIDER ATTACHED TO AND MADE A PART OF THE CONTRACT OF SALE
BETWEEN:
Robert & Barbara Dakin, Seller(s)
and
Mildred Dorta and Anthony Acosta, Purchaser

Dated:        1|4        , 2018

In the event any provision of the printed contract, other Riders or document is inconsistent with the Rider, the terms of this Rider shall be deemed to be controlling with respect to the subject matter.

# WORKOUT LANGUAGE

1. It is expressly agreed and understood that the total encumbrances against this property plus closing costs payable by sellers are in excess of the sales price pursuant to this contract. In as much as sellers do not have the ability to provide funds to satisfy such liens and expenses to the extent that they exceed the purchase price, sellers represent that they are making a good faith effort to work out a lesser payoff so they are able to close without the expenditure of additional sums in excess of the purchase price. In the event that the seller is unable to receive written verification from the existing lien holders that they will accept the lesser terms as necessary pursuant hereto within 150 days from the date the workout package is submitted then either party may cancel, whereupon down payment monies shall be refunded to the purchaser and neither party shall have any further liability hereunder.

2. Purchaser acknowledges the subject property is being sold "AS IS" at time of closing in all aspects including condition, cleanliness, permits, c/o's or otherwise.

3. At the Seller's sole discretion, any tax adjustment credit due to Seller may be waived by Seller in consideration for the Purchaser paying expenses on behalf of the Seller to an amount equal to the tax credit due to Seller.

4. If municipality requires well water testing by Seller, Purchaser would perform said test at his own expense regardless of statute requirement.

5. All real estate commissions are subject to the seller's lender's approval and may be less than or more than the amount stated in the Exclusive Right to Sell Agreement.

6. PREPARATION OF CONTRACTS: In the event that this Contract is cancelled due to the fact that the buyer's mortgage application is denied by the Lender, or if the Purchaser backs out of the Contract for any reason, then Seller's attorney shall retain the sum of $250.00 from the contract down payments as and for the costs of preparing this contract and Buyer herby consents to the deduction for same.

7. In addition to any other "no representations" provision contained in this Contract, Seller makes no representation concerning the amount of real property taxes, assessments or municipal charges affecting the Premises; the physical condition of the Premises; the environmental condition of the Premises; the size and dimension of the property; any well, septic, plumbing, heating and electrical systems on the Premises; the existence or

levels of radon; the quality of water provided to the Premises or the compliance or the lack of compliance with any state, federal or local rules, ordinances or regulations affecting the Premises or the use thereof; or any other thing or matter affecting the Premises.

8. Client agrees that the attorney has permission to transmit a fully executed contract of sale to the real estate broker.

_____
Robert Dakin, *Seller*

_____
Barbara Dakin ,*Seller*

_____
Mildred Dorta, *Purchaser*

_____
Anthony Acosta, *Purchaser*

**AFFIRMATION FOR RPAPL SECTION 265-A**
**CONVEYANCES OF ONE-TO-FOUR FAMILY DWELLINGS**
**BY NATURAL PERSONS**

Title No. _____

Date: _____ 1-4 , 2018

Robert & Barbara Dakin ("Sellers") and Mildred Dorta & Anthony Acosta ("Purchasers"), each being duly sworn, deposes and says:

1.    Seller affirms that they have been residing at 25 Winston Lane, Garrison, NY 10524 (the "Premises").

2.    Seller affirms that they will not reside in the Premises after their transfer to title to the Purchasers.

3.    Purchasers affirm that the Premises will/will not be their primary residence after their acquisition of the Premises.

4.    Sellers and Purchasers affirm that the Sellers are not the spouse of the Purchaser, or the Purchaser's parent, grandparent, child or grandchild, or the sibling of such a person or such person's spouse.  Detail: _____

5.    Sellers and Purchasers affirm that the Sellers do not have a right to acquire an interest in the Premises after closing.

6.    Sellers affirm that a person other than Purchasers does not have a right to acquire an interest in the Premises.

That we make this Affirmation to induce _____ to insure title to the Premises without exception for the consequences of the Home Equity Theft Prevention Act as set forth in New York State's Real Property Actions and Proceedings Law Section 265-A, knowing that it will rely on the truth of the statements herein made.

_____
Robert Dakin, *Seller*

_____
Barbara Dakin ,*Seller*

_____
Mildred Dorta, *Purchaser*

_____
Anthony Acosta, *Purchaser*

## SHORT SALE ADDENDUM TO CONTRACT OF SALE

THIS ADDENDUM IS HEREBY MADE A PART OF THE ANNEXED CONTRACT OF SALE BY AND BETWEEN

SELLER(S): ROBERT & BARBARA DAKIN

AND

PURCHASER(S): MILDRED DORTA & ANTHONY ACOSTA

DATED: _____, 2018

**IN THE EVENT ANY PROVISIONS CONTAINED IN THE PRINTED FORM OF CONTRACT OR IN ANY OTHER RIDER ATTACHED TO AND MADE A PART OF THIS CONTRACT CONFLICT WITH THE PROVISIONS CONTAINED IN THIS SHORT SALE ADDENDUM, THEN AND UPON SUCH OCCURRENCE(S), THE PROVISIONS OF THIS SHORT SALE ADDENDUM SHALL CONTROL IN EACH INSTANCE.**

1.    **SHORT SALE APPROVAL:**   This Agreement is contingent upon Seller's receipt of written consent from all existing secured lenders and lienholders ("Short Sale Lenders"), no later than 150 days from submission of workout package ('Short Sale Contingency Date"), to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the subject real property (the "Property"), to pay the existing balances on loans secured by the Property, real property taxes, brokerage commissions, closing costs and other monetary obligations which by the terms of the Contract of Sale, the Seller is required to pay and discharge (including but not limited to title charges, documentary transfer taxes, prorations, retrofit costs, repairs, etc.). If Seller fails to give Purchaser written notice of all existing Short Sale Lender consents on or before the Short Sale Contingency Date, either Seller or Purchaser may cancel this Contract in writing and Purchaser shall be entitled to the return of Purchaser's down payment. Seller shall reasonably cooperate with existing Short Sale Lenders in the Short Sale process.

2.    **NO ASSURANCE OF LENDER APPROVAL:**   Purchaser and Seller understand that Short Sale Lenders: [a] are not obligated to accept a short sale; (b) may require Seller to forward any other offer received; and (c) may accept other offers. Short Sale Lenders may require that in order to obtain their approval for a short sale, some terms of the Contract of Sale, such as the date of the Closing may be amended or Seller may be required to sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Seller does not have to agree to any of Short Sale Lenders' proposed terms.  Neither the Purchaser, the Seller nor the broker(s) has control over whether Short Sale Lenders will consent to a short sale or to any act, omission or decision by any Short Sale Lender in the short sale process; (d) Short Sale Lender may also not accept the contract price and require that the Purchaser pay more for the subject property in order to obtain the Short Sale Approval.

3.    **PURCHASER AND SELLER COSTS:**   Purchaser and Seller acknowledge that each may incur costs in connection with rights or obligations under the Contract of Sale. These costs may include but are not limited to payments for loan applications, inspections, appraisals and other reports. If Short Sale Lenders do not consent to this transaction or if either party cancels this Contract, such costs will be the sole responsibility of the party who incurred them.

4.    **CREDIT, LEGAL AND TAX ADVICE:**  Seller has been informed and is aware that a short sale may have credit or legal consequences and may result in taxable income to Seller. Seller is advised to seek advice from an attorney, certified public accountant or other expert regarding the potential consequences of a short sale.

5.    **HOME EQUITY THEFT PREVENTION ACT:**  Seller and Purchaser are advised that in the event the Home Equity Theft Prevention Act is applicable to the within transaction, that Seller and Purchaser shall cooperate and obtain the advice of their respective counsel, to comply with all of the terms, conditions and provisions of said Act and in particular, with any notification requirement to Seller of a right of rescission if the Purchaser is deemed to be an "Equity Purchaser" within the meaning of the Act.

6. .    **PROPERTY CONDITION DISCLOSURE:**    Article 14 of the Real Property Law of the State of New York ("the Property Condition Disclosure Act" or "PCDA") provides that the Seller of a one (1) to four (4) family dwelling ("the Premises")  must deliver to the prospective Purchaser of the Premises prior to signing by the Purchaser of a binding Contract of Sale a certified Property Condition Disclosure Statement ("PCDS") regarding certain conditions and information concerning the Premises which are known to the Seller.  Such PCDS is not a warranty of any kind by the Seller or by any agency representing the Seller in this transaction. It is not a substitute for any inspections or test which may be conducted by the Purchaser or qualified agents on behalf of the Purchaser, and the Purchaser is encouraged to obtain his or her own independent professional engineer inspections and environmental tests and is also encouraged to check public records pertaining to the premises.  Seller represents that Seller does not have actual knowledge, records or personal recollection of facts and/or events suitable to accurately complete the information requested to be set forth in the state formulated PCDS.

Section 465 of the PCDA provides that in the event that a Seller fails to deliver a PCDS before the Purchaser signs a binding Contract of Sale, the Purchaser is to receive upon the transfer of title a credit against the purchase price in the sum of $500.00 subject to short sale approval.  Seller hereby offers to give the Purchaser, at closing, a credit against the purchase price in the sum of $500.00 subject to short sale approval.  Purchaser hereby accepts the offer, in return for which credit; the Purchaser hereby released the Seller from any obligation otherwise imposed by the PCDA to deliver a PCDS.

7.    **PRONOUNS:**  Whenever the term "Seller" or "Purchaser" is utilized herein, such term shall be deemed to include the plural of such designation, as the context or sense shall require.

By signing below, Seller and Purchaser acknowledge that each has read, understands accepts and has received a copy of this Short Sale Addendum.

Robert Dakin, *Seller*    1/2/18    Date

Mildred Dorta, *Purchaser*    1/3/18    Date

Barbara Dakin, *Seller*    1/2/18    Date

Anthony Acosta, *Purchaser*    1/3/18    Date

## RIDER ATTACHED TO AND MADE PART OF CONTRACT OF SALE

### -BETWEEN-

**PURCHASER:**   Mildred Dorta and Anthony Acosta
**SELLER:**   Robert Dakin and Barbara Dakin
**DATED:**   January 4 , 2018

------------------------------------------------------------------------

If any provision of this Rider shall conflict with any printed provision
of this Contract, the Provisions of this Rider shall control.

1.   **REPRESENTATIONS** - Seller represents that the plumbing, heating, electrical systems, septic (if applicable)  and well (if applicable) will be in working condition, and the roof and basement free from leaks at the time of closing of title.  If the premises is furnished water from a driven well, Seller represents that same is potable and of sufficient yield for use of the premises as a **one-family** residence dwelling; and no person(s) other than the owners of the premises have any claim or right, whether by license, easement or otherwise, to cause any waste discharge or other matter to flow into said septic system or to draw water from the well. Seller further represents that all improvements together with the septic system and well, are located within the physical boundaries of the premises. This representation shall survive delivery of the deed.

2.   **SUBJECT TO**  -  In addition to the other provisions of the within Contract, said premises is sold subject to any state of facts an accurate survey may show; however, the Purchaser shall have the option to cancel this Contract upon notice to the Seller in the event that the survey shows any encroachments upon the premises or shows any improvements included in the sale located outside the boundary lines of the premises.  The Seller's sole liability in such event will be to refund the down payment along with the cost of the survey and title examination.  If Seller has a current or recent survey, Seller agrees to forward a legible copy of print to the Purchaser's attorney.

3.   **ENGINEERING/TERMITE INSPECTION** -Purchaser shall have the right to have the premises examined by an engineer and for termites or other wood destroying pests at his own cost and expense.  If such engineering examination reveals structural defects and/or unacceptable conditions, Seller shall have the option to correct same or Seller or Purchaser may terminate this contract.  If such examination reveals present or previous infestation, Purchaser shall so notify Seller's attorney within ten (10) days from Contract date in which event Seller shall repair the damage caused thereby and shall supply Purchaser with a guarantee from a licensed exterminator provided, however, that if the cost of such repairs and guarantee shall exceed the sum of $1,500.00 and Purchaser is unwilling to settle for said sum, Seller may elect to cancel this agreement and refund Purchaser's down payment.

4.   **CERTIFICATE OF OCCUPANCY** - At the time of closing of title, Seller will produce a Certificate of Occupancy for the structure and any additions thereto to be conveyed for the present intended use of the premises, or a letter from the appropriate municipal authority stating that the same is not required and the reasons therefor.

5.   **TENANTS** - Omit

6.   **REAL ESTATE TAXES** - Omit

7.   **LATE CHARGES/PENALTIES** - Notwithstanding any other provision of the Contract, no penalty or late charge shall be due if the delay in closing shall be due to Purchaser's lending institution, survey work or the title company.

8.   **SUCCESSORS** - In the event of the death or disability of either or both of the Purchasers prior to the consummation of closing and the delivery of the Deed hereunder, the surviving Purchaser or their legal representatives, as the case may be, shall have the option of declaring this Contract null and void and all sums paid on account hereof shall be returned to the surviving Purchaser or their representative.

9.   **CLOSING DATE** - Omit

10.   **ACCESS** - Seller shall permit Purchaser and its architect, decorator or other authorized persons to have the right of access to the premises between the date hereof and the Closing for the purpose of inspecting the same and taking measurements, at reasonable times and upon reasonable prior notice to Seller (by telephone or otherwise).  Further, Purchaser shall have the right to inspect the premises at a reasonable time during the 24-hour period immediately preceding the closing.

11.   **UREA-FORMALDEHYDE INSULATION** - Omit

12.   **RADON** - Seller represents that the premises are free of Radon contamination.  Purchaser shall have the right, if he so desires, to have the premises tested for Radon contamination, within 30 days of this Contract by the standard "canister" test currently being used.  In the event that such test indicates the presence of Radon in excess of 4 Picouries (the current EPA guideline), Purchasers shall have the right to cancel this Contract.  Should Purchaser so cancel, the deposit monies shall be immediately returned to Purchaser.  Purchaser shall be solely responsible for the cost of the test, but Seller shall cooperate in the conduct of the test and shall permit access to the premises for said test.

13.   **HAZARDOUS MATERIALS** - Seller, represents that, to the best of their knowledge,  the premises have not been used for the disposal of hazardous and/or toxic materials, and that the premises do not constitute an inactive hazardous waste disposal site, as that term is defined in Article 27 of the New York State Environmental Conservation Law.  This provision shall survive transfer of title.

14.   **LEAD-BASED PAINT** - This Contract is contingent upon a risk assessment or inspection of the premises for the presence of lead-based paint and/or lead-based paint hazards at Purchaser's expense until 9:00 pm.m on the tenth (10th) calendar day after Purchaser's attorney's receipt of a fully executed copy of this Contract.  (Intact lead-based paint that is in good condition is not necessarily a hazard.  See the EPA pamphlet Protect Your Family From Lead In Your Home for more information.)  This contingency will terminate at the above predetermined deadline unless

Purchaser's attorney delivers to Seller's attorney a written statement that it elects to cancel this Contract; and in such event, all monies deposited herein shall be returned to Purchaser; and, thereupon, this Contract shall be terminated. The Purchaser may remove this contingency at any time without cause.

15.    **SELLER'S DISCLOSURES** - Pursuant to the Property Condition Disclosure Act, Article 14 of the Real Property Law, Purchaser is to receive a Property Condition Disclosure Statement. In the event no Disclosure statement is attached to the Contract, Seller will give Purchaser a $500.00 credit in lieu of said Disclosure Statement.

16.    **CARBON MONOXIDE** - Seller represents that the premises is a one or two-family dwelling, or a cooperative apartment, or condominium unit in a one or two-family dwelling, and that installed in the premises is an approved and operational carbon monoxide detecting device in compliance with subdivision 5-a of Section 378 of the Executive Law concerning carbon monoxide detectors.

17.    **OIL TANK INSPECTION** - In the event the premises are serviced by an "in ground' fuel oil tank, Purchaser shall have 14 days from receipt of fully executed Contracts to have an oil tank integrity test performed, at Purchaser's cost. In the event said tank test fails, Purchaser shall have the option to void this Contract and receive a full refund of Purchaser's down payment.

PURCHASER:                                        SELLER:

_____                 _____

_____                 Barbara Dakin

# SELLER'S RIDER

## RIDER ATTACHED TO AND MADE A PART OF THE CONTRACT OF SALE BETWEEN

### Robert & Barbara Dakin, Sellers
### and
### Mildred Dorta and Anthony Acosta, Purchasers

Dated: January 4 , 2018

To the extent that this rider conflicts with or is inconsistent in any way with the contract to which it is attached, this rider shall prevail and can be signed in counterparts.

### WORKOUT

1.  **BANKRUPTCY:** It is expressly understood that the Seller has filed a Chapter 13 Bankruptcy and that their assets are under the jurisdiction of the United States Bankruptcy Trustee. However, in order to facilitate a sale of their home, the Seller will file a motion under 363(f) with the bankruptcy court to approve the sale and this transaction is subject to the said approval.


_____          _____
Robert Dakin, *Seller*                    Mildred Dorta, *Purchaser*


_____          _____
Barbara Dakin, *Seller*                   Anthony Acosta, *Purchaser*

# SELLER'S RIDER

## RIDER ATTACHED TO AND MADE A PART OF THE CONTRACT OF SALE BETWEEN

### Robert & Barbara Dakin, Sellers
### and
### Mildred Dorta and Anthony Acosta, Purchasers

Dated: January 4 , 2018

To the extent that this rider conflicts with or is inconsistent in any way with the contract to which it is attached, this rider shall prevail and can be signed in counterparts.

## WORKOUT

1.    **BANKRUPTCY:**  It is expressly understood that the Seller has filed a Chapter 13 Bankruptcy and that their assets are under the jurisdiction of the United States Bankruptcy Trustee.  However, in order to facilitate a sale of their home, the Seller will file a motion under 363(f) with the bankruptcy court to approve the sale and this transaction is subject to the said approval.

_____
Robert Dakin, *Seller*


_____
Barbara Dakin, *Seller*

Mildred Dorta, *Purchaser*


Anthony Acosta, *Purchaser*

TOTAL P.01